UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHARLES HAWKINS, an individual; and ODESSER H. HAWKINS, an individual,

    Plaintiffs,

  v.

BANK OF AMERICA N.A., a business entity; SELECT PORTFOLIO SERVICING, INC., a business entity; and DOES 1-50; inclusive,

    Defendants.

No. 2:16-cv-00827-MCE-CKD

**MEMORANDUM AND ORDER**

  Through the present lawsuit, Plaintiffs Charles Hawkins and Odesser H. Hawkins ("Plaintiffs") claim that their home was subject to unlawful foreclosure proceedings due to various fraudulent acts committed by Defendants Bank of America N.A. ("BANA") and Select Portfolio Servicing, Inc. ("SPS"). Both BANA and SPS serviced Plaintiffs' mortgage loans. SPS now moves to dismiss Plaintiffs' Complaint against it on grounds that Plaintiffs have failed to state any cognizable claim against SPS, therefore making dismissal of SPS proper under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, SPS' Motion is DENIED.[1]

---

[1] Having determined that oral argument was not of material assistance, the Court submitted this matter on the briefing in accordance with Local Rule 230(g).

# BACKGROUND[2]

In approximately December of 2005, Plaintiffs bought a residence located at 5716 Glassboro Way in Sacramento, California.  In order to finance that purchase, Plaintiffs obtained both first and second mortgages on the property from First Franklin Financial Corp., a lender specializing in subprime loans.  The principal amount financed was $253,600.00 on the first mortgage and $63,400.00 on the second.  In approximately December of 2006, First Franklin was sold to Merrill Lynch.  Then, in 2008, Merrill Lynch's holdings were acquired by Bank of America ("BANA").

According to Plaintiffs, they wanted to modify both loans in order to make only one payment.  On or about September 28, 2013, they claim they entered into a loan modification agreement that would combine their first and second mortgages into one loan with a single payment.  They were placed in a three-month Trial Period Payment Plan under the government's Home Affordable Loan Modification program and, on November 21, 2013, made their first modified mortgage payment of $1,706.73 to BANA.  At this point Plaintiffs also received a letter from BANA advising them that BANA was transferring the servicing of Plaintiffs' loan to SPS, effective December 16, 2013.  After making the second modified payment in December, Plaintiffs received a Validation of Debt Notice from SPS confirming that the servicing of Plaintiffs' mortgage had been transferred and that the total debt owed was $292,130.79.  Plaintiffs subsequently made their third modified mortgage payment to SPS in January of 2014, and claim they continued to remain current on their modified loan thereafter.

In April of 2015, after continuing to pay on their modified loan for well over a year, Plaintiffs state they were approached by unidentified individuals who told them they were in default on their mortgage.  Plaintiffs initially thought there was some kind of misunderstanding and turned to both BANA and SPS for answers.  A BANA

---

[2] The allegations in this section are drawn directly, and sometimes verbatim, from the allegations of Plaintiffs' Complaint.

representative allegedly told Plaintiffs that they remained current, and that there was only one loan associated with the subject property.  Someone from BANA also told Plaintiffs that their second mortgage had been "charged off" with the lien being released.  SPS, for its part, reiterated that their database reflected only one loan and that because Plaintiffs were current on that loan there was no risk of foreclosure.  SPS allegedly told Plaintiffs to contact the Better Business Bureau about the foreclosure letters they were receiving.

Despite these assurances from both BANA and SPS, Plaintiffs began receiving notices that they had an outstanding debt of some $129,424.15.  Although their credit report also showed only one loan, on December 27, 2015, Plaintiffs obtained notice that their home was being auctioned off at a foreclosure auction the next day, and the property was in fact sold pursuant to a trustee's sale on December 28, 2015.  SPS still insisted that Plaintiffs' loan was current and that they had been approved for a home modification.  Additionally, a BANA representative allegedly went through its loan file without seeing any indication of a second mortgage.  Significantly, too, BANA insisted that it had purchased _all_ of First Franklin, who had issued both the first and the second mortgages.

An unlawful detainer proceeding ensued after Plaintiffs' property was sold at the trustee's sale, and ultimately Plaintiffs were told by the company that had purchased the property that they could retain their home only if they assumed a debt of $129,424.15 plus foreclosure fees and other charges.  Moreover, title in the residence would be transferred back to Plaintiffs only after several years of payments on this debt.  According to Plaintiffs, in order to save their family home, they had no choice other than to accept these unfavorable terms and to resort to this lawsuit in order to rectify the injustice to which they were subjected.

Plaintiffs' lawsuit includes six separate causes of action against both SPS and BANA for fraud, negligent misrepresentation, negligence, intentional infliction of emotional distress, wrongful foreclosure, and violations of California's Unfair Practices

3

Act, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"). SPS now moves to dismiss all six of those claims, alleging that Plaintiffs have failed to plead any viable claims against it.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

4


to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

### A. Fraud

The elements of a cause of action for fraud are: (1) a misrepresentation; (2) knowledge of its falsity; (3) an intent to defraud; (4) justifiable reliance; and (5) resulting damage. See Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004). SPS correctly points out that when a plaintiff alleges fraud, Rule 9(b) ordinarily requires that the "circumstances constituting fraud. . . [should] be stated with particularity." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003).

According to SPS, Plaintiffs have utterly failed to satisfy these pleading requirements. SPS contends Plaintiffs have failed to allege any misrepresentations by SPS, let alone any factual basis for the assertion that SPS knew the falsity of such communications or made them with the intent to defraud. SPS goes on to assert that Plaintiffs have not alleged reliance, causation, or damages and have not pled their claims with the requisite specificity.

Plaintiffs, however, have alleged that SPS repeatedly advised them that there was only one loan on the property, an assertion that ultimately proved to be false. According to the Complaint, on or around April 20, 2015, Plaintiffs claim that an authorized representative of SPS confirmed that their database showed only one loan on

the property. Thereafter, during June and July of 2015, Plaintiffs claim they were again assured that there was no other loan on the subject property. Plaintiffs contend they were also told by SPS that, since they were current on their loan, there was no risk of foreclosure. Pls.' Compl., ¶¶ 30-31, 49-50. Plaintiffs assert that these allegations were in fact false and communicated with the intent to lull Plaintiffs into a false sense of security. Id. ¶ 53. In addition, Plaintiffs claim that they justifiably relied on SPS's representations about their loan status by not exploring available options to make the second mortgage current before the property was sold at a trustee's sale. Id. ¶ 54. Finally, in demonstrating resulting damage, Plaintiffs point to the fact that their property was ultimately sold at a trustee's sale and that they had to assume a large additional mortgage to retain their home. Id. ¶¶ 55, 58.

Under the circumstances, the Court believes that Plaintiffs' fraud allegations are sufficient to withstand pleadings scrutiny at this time. Despite the heightened standards applicable to fraud claims, as Plaintiffs point out such requirements may be relaxed when "the defendant must necessarily possess full information concerning the facts of the controversy," Bradley v. Hartford Acc. & Indem. Co., 30 Cal. App. 3d 818, 825 (1973), or "when the facts lie more in the knowledge of the opposite party," Turner v. Milstein, 103 Cal. App. 2d 651, 658 (1951). Moreover, in some instances specificity can be premature where discovery can eliminate confusion as to what representations were made and by whom. See, e.g., Charpentier v. L..A. Rams Football Co., 75 Cal. App. 4th 301, 312 (1999).

The circumstances of this matter present a quandary as to just what happened to the loans securing Plaintiffs' mortgages. Plaintiffs were unquestionably provided with inaccurate information upon which they relied and which resulted in substantial damage. Plaintiffs have pointed to specific instances where SPS itself provided information that later proved to be incorrect, and have identified dates and sources for that information. This is enough to state a viable fraud claim at this time, particularly since Defendants, as opposed to Plaintiffs, are more apt to have information as to just how and why that

information was faulty, and whether they knew or had reason to know the information was incorrect yet intended to induce Plaintiffs' reliance on their representations. At a minimum, Plaintiffs are entitled to engage in discovery that further elucidates what transpired and just how SPS may have been responsible. Consequently, SPS's Motion to Dismiss Plaintiffs' first cause of action, for fraud, is DENIED.

### B.  Negligence Based Claims

In their second and third causes of action, Plaintiffs plead two claims sounding in negligence, negligent misrepresentation, and common-law negligence. According to SPS, because both claims presuppose a duty of care, they fail because no such duty was owed to Plaintiffs by SPS.

Like negligence, a negligent misrepresentation claim presupposed the existence of a duty of care. See Paz v. California, 22 Cal. 4th 550, 559 (2001) (any negligence based cause of action requires duty of care). SPS correctly points out that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991). Specifically with regard to modification of an existing loan and in a case also involving SPS, this Court has previously recognized that an ordinary loan modification "is nothing more than a renegotiation of loan terms" with no duty of care owed to the borrower since "[r]enegotiating loan terms falls squarely within Defendants' conventional role as money lender." Jerviss v. Select Portfolio Servicing, Inc., No. 2:15-cv-01904, 2015 WL 7572130 at *4-5 (E.D. Cal. Nov. 25, 2015).

There are nonetheless exceptions to the general rule. Once a lender agrees to consider a modification of a borrower's loan, for example, the lender owes the borrower a duty to exercise reasonable care in reviewing a loan modification application. Alvarez v. BAC Home Loans Servicing, LP, 228 Cal. App. 4th 941, 948 (2014). In reaching that conclusion, the California Court of Appeal reasoned that failing to timely and carefully process an application may give rise to negligence liability due to the

significant harm that such failure may entail.  Id. at 948-49.  That finding was underscored by the court's recognition that a lender's mishandling may be particularly blameworthy since borrowers typically lack the bargaining power to remedy poor performance.  Id. at 949.

The reasoning of Alvarez extends to the circumstances presented by this case. Once SPS began providing information on the status of Plaintiffs' loan modification, particularly once confronted with the fact that Plaintiffs were facing foreclosure once a seemingly phantom loan resurfaced, SPS had a duty to provide Plaintiffs with accurate information concerning the loans on the property.  According to Plaintiffs' Complaint, SPS failed to do so, instead reassuring Plaintiffs that they were current on their loan obligations and were in no danger of foreclosure.  Pls.' Compl., ¶¶ 30-31, 49-50.

Nor is the Court persuaded by SPS's remaining arguments that Plaintiffs have not identified any breach of duty, let alone causation and damages.  As stated above, Plaintiffs plainly allege that SPS representatives told them that there were no other loans on the property, that the loan SPS serviced was current, and that there was no danger of foreclosure.  Plaintiffs also allege that as a result of those representations they refrained from taking other steps to protect their property from foreclosure, and sustained damage when a trustee's sale nonetheless occurred.

Given the foregoing, Defendant SPS's Motion to Dismiss as to the second and third causes of action, for negligent misrepresentation and for negligence, is also DENIED.

### C. Intentional Infliction Of Emotional Distress

As Plaintiffs' fourth cause of action, they assert intentional infliction of emotional distress ("IIED") given Defendants' alleged misrepresentations, the foreclosure on their home that ensued, and the severe emotional distress and attendant "extreme fear, humiliation and shame" they claim to have suffered as a result.  Id. at ¶ 97.

To prevail on a claim for IIED, Plaintiffs must show (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

probability of causing, emotional distress; (2) resulting severe or extreme emotional distress by the plaintiff; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998). "The alleged outrageous conduct 'must be so extreme as to exceed all bounds . . . usually tolerated in a civilized community.'" Id. In addition, the requisite severe emotional distress must be such that "no reasonable [person] in civilized society should be expected to endure it." Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993).

Defendant SPS alleges that Plaintiffs cannot meet any of these hurdles in stating a viable IIED claim. They correctly point to authority finding that, as a matter of law, the mere act of foreclosing on property does not constitute the "outrageous conduct" required to support a claim for IIED. Aguinaldo v. Ocwen Loan Servicing, LLC, No. 5:12-cv-01393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sept. 4, 2012). They also claim that Plaintiffs' description of the distress they suffered is too conclusory to suffice.

Accepting Plaintiffs' allegations as true, as it must do in the context of a motion to dismiss, the Court disagrees. Plaintiffs contend that SPS wrongfully advised them that they were current on their mortgage and that there were no other loans associated with the subject property. Those allegations, particularly when coupled with SPS's assurances that Plaintiffs were current on their loan and that there was no risk of foreclosure, are adequate at this time to support a claim for IIED given what ultimately transpired. Whether conduct is outrageous is usually a question of fact. Ragland v. U.S. Bank National Assn., 209 Cal. App. 4th 182, 204 (2012).

///
///
///
///
///
///

**D.     Wrongful Foreclosure**

Defendant SPS takes issue with Plaintiffs' fifth cause of action, for wrongful foreclosure, on grounds that SPS had no formal involvement in the foreclosure of the property.[4] Moreover, according to SPS, even if it was involved, Plaintiffs have failed to satisfy the pleading requirements of the claim by failing to allege a valid tender of the amount owed.

Again, given the substantial questions that remain as to exactly what happened in this matter, it would be premature at this time to dismiss Plaintiffs' claim. Plaintiffs assert that the true scope of SPS's involvement can only be ascertained through discovery that has not yet taken place at this early stage of the proceedings. The Court agrees that any determination of SPS's involvement in the foreclosure, whether directly or indirectly, should wait until after initial discovery has been completed.

SPS's argument that Plaintiffs have failed to allege a valid tender is no more persuasive. Tender is not required where the validity of the underlying debt is attacked, since tender would constitute an affirmation of that disputed debt. Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997); Stockton v. Newman, 148 Cal. App. 2d 558, 564 (1957). Moreover, since a court need not require tender where it would be inequitable to do so, the requirement is a matter subject to the Court's discretion in any event. Onofrio, 55 Cal. App. 4th at 424. Under the circumstances present here the Court finds that requiring tender would indeed be inequitable, and declines to impose any such condition.

For all these reasons, SPS's Motion to Dismiss Plaintiffs' fifth cause of action is DENIED.

///

///

---

[4] SPS has requested that the Court take judicial notice, pursuant to Federal Rule of Evidence 201(b), of various records maintained by the Sacramento County Recorders' Office concerning the subject property, including the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed upon Sale. Those requests are unopposed and are granted.

### E. Violation Of California's UCL

Plaintiffs' sixth and final cause of action is for violation of California's UCL. The UCL prohibits "any unlawful, unfair or fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. A private party can sue under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of said unfair competition." Id. § 17204. Here, SPS attacks Plaintiffs' UCL claim not on grounds that no unlawful, unfair or fraudulent practice has been identified, but instead because Plaintiffs have allegedly failed to allege any damages attributable to SPS's conduct that can satisfy the injury in fact requirement. That contention, however, by SPS's own admission is predicated on the validity of the arguments it posited in support of dismissal of Plaintiffs' preceding causes of action, and as set forth above the Court has rejected those arguments at this early stage of the litigation. Therefore, Plaintiffs' sixth cause of action also survives pleadings scrutiny.

### CONCLUSION

For all the foregoing reasons, Defendant SPS's Motion to Dismiss (ECF No. 8) is DENIED.

IT IS SO ORDERED.

Dated: February 13, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE